## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2018, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Joseph C. Chapelle
Jackie S. Gessner
Barnes & Thornburg, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Lisa L. Wojihoski
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| City of Lawrence, <br> *Appellant-Defendant,* <br><br> v. <br><br> Jeff Dullaghan, <br> *Appellee-Plaintiff.* | November 30, 2018 <br><br> Court of Appeals Case No. 18A-PL-824 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James B. Osborn, Judge <br><br> Trial Court Cause No. 49D14-1611-PL-39334 |

**Mathias, Judge.**

[1]     The City of Lawrence ("the City") appeals the Marion Superior Court's interlocutory order denying the City's motion to dismiss or, in the alternative, for summary judgment in a petition for judicial review filed by Jeff Dullaghan

("Dullaghan"), a firefighter employed by the City. On appeal, the City presents one issue for our review, which we restate as whether the trial court lacked subject matter jurisdiction to consider Dullaghan's petition for judicial review.

We reverse and remand.

## Facts and Procedural History

Dullaghan is a firefighter employed by the City, specifically the Lawrence Fire Department ("the Department"), since 2002. The exact date on which his employment began is at issue in this case.

Dullaghan, along with several other recruits, passed the preliminary testing to become a firefighter. Accordingly, on June 4, 2002, the then-Chief of the Department sent a letter to the City's Board of Public Works and Safety ("the Board") that provides in relevant part:

> Dear Board Members,
>
> I would like to request the following individuals be approved for employment with the City of Lawrence Fire Department. These individuals have successfully completed all testing required by State law as well as local ordinances. The Fire Merit Commission has also approved these individuals for hire. *I am requesting that their hire date be effective June 16, 2002.*

Appellant's App. Vol. 3, p. 28 (emphasis added). Dullaghan's name appeared in the list of recruits the Chief requested to be approved for employment.

The Department assigned most members of Dullaghan's recruit class a hire date of June 16, 2002, consistent with the above-quoted letter. Dullaghan, however,

failed the vision portion of the medical examination required by the Indiana Public Employees Retirement Fund ("PERF"). For PERF to approve Dullaghan, the Department had to certify to PERF that it would provide a reasonable accommodation for Dullaghan's vision condition, i.e., an updated eyeglasses prescription. The Department did so and informed PERF that it had made such accommodations. Because of the delay in obtaining Dullaghan's approval for PERF membership, the Department did not receive Dullaghan's PERF approval until after those of his fellow recruiting class. Therefore, the Department assigned Dullaghan a hire date of June 18, 2002, the date on which the Department's then-Chief received a telephone call from PERF informing him that PERF had approved Dullaghan for membership. The City claims, and Dullaghan contests, that Dullaghan could not be hired on the same date as the remaining recruits because PERF had not approved him at the same time as the other recruits.

[6] The Department called Dullaghan on Friday, June 14, 2002, and told him to report on Monday, June 17, 2002, when the recruits were given uniforms. Dullaghan showed up as requested on June 17, but for some reason was unable to obtain his uniform at the time. He was told to show up the following day to begin training. Dullaghan did so and began classes with the rest of the recruits on June 18, 2002. Dullaghan successfully completed the firefighting training. Dullaghan began as a probationary firefighter. He later achieved the rank of

second-class firefighter, and currently holds the rank of private first-class firefighter.[1]

[7] Seniority in the Department is generally determined by the hiring date. Seniority among members of the same recruit class who were hired on the same date is determined by the recruit's performance in the fire technology portion of the recruit training. Dullaghan received the highest score in the fire technology portion of the training. Thus, he would normally have seniority among members of his fellow recruiting class. But because the Department assigned Dullaghan a hire date two days after the rest of his class, he instead has the lowest seniority among his recruit class.

[8] Dullaghan's lower seniority negatively impacts Dullaghan's priority status when selecting vacation days and scheduled days off and when bidding on shift assignments. The Department also considers seniority among several factors when determining promotions. Seniority does not otherwise impact a member's rate of pay, benefits, or pay raises.

[9] Dullaghan first attempted to address the issue of his hire date on January 14, 2004, when he wrote a letter to the then-Chief of the Department to review his hiring date. On January 29, 2004, the Chief responded to Dullaghan's letter, writing:

---

[1] The ranks in the Department, from lowest to highest, include: probationary firefighter, second-class firefighter, private first-class firefighter, captain, deputy chief, and chief.

After receiving your letter and conducting a meeting with you in regards to your seniority with the City of Lawrence Fire Department, I would like to report my decision as discussed with you on January 21, 2004.

You had requested in writing that I review your seniority ranking on the department. Your current ranking is 65 out of 69 firefighters. After reviewing the documentation, I must report your seniority will remain at its current level.

*My findings are that your actual hire date with the City of Lawrence Fire Department was June 18, 2002.* That was the date the State PERF Board approved your Firefighter Pension Application. As you are aware, the PERF Board originally denied your application. The City of Lawrence Fire Department agreed to provide reasonable accommodations for you in order for you to be accepted by the PERF Board and be hired.

The department bas[es] it's [sic] seniority on two things[.] [O]ne is the original date of hire[,] and two is if more than one firefighter is hired on the same date, the seniority is then determined by their ranking in the Fire Technology portion of the recruit class. This has been the practice of the department for at least the past eight years.

The situation that you are in is very unique. First of all you started employment two days later than the other firefighters in your recruit class except for [another firefighter] who started several weeks later. The other unique situation is that you did receive the highest score in the Fire Technology portion of the class. Seniority is based on hire date.

If you disagree with this decision, you have the right to appeal to the Fire Merit Commission per our General Orders.

Appellant's App. Vol. 2, p. 149 (emphasis added).

[10] Dullaghan appealed the Chief's determination to the Fire Merit Commission ("the Commission"), which held a hearing on the matter and affirmed the Chief's decision. Dullaghan did not further appeal the Commission's determination at that time. During these proceedings, Dullaghan was unaware of the Chief's June 4, 2002 letter to the Board, which lists him among the firefighters to be hired effective June 16, 2002.

[11] Dullaghan continued to question his hire date, and he requested to see his personnel file on several occasions. The June 4, 2002 letter was not contained in his Department personnel file on those occasions. But when Dullaghan asked to see his personnel file on April 14, 2016, he discovered for the first time that the City kept a separate personnel file in addition to the one kept by the Department. In the City personnel file, Dullaghan found the June 4, 2002 letter that appears to support his belief that his hire date should be June 16, 2002.

[12] Thereafter, Dullaghan sought to revisit the issue of his hire date with the current Chief of the Department. The Chief met with Dullaghan and informed him that he could not alter the Commission's earlier 2004 decision. Dullaghan therefore filed a petition with the Commission on August 8, 2016, asking the Commission to change his hire date to June 16, 2002. The Commission held a hearing on the petition on October 6, 2016, and denied Dullaghan's request to change his hire date.

[13] Dullaghan sought judicial review of the Commission's 2016 decision and filed a complaint for judicial review in Marion Superior Court on November 3, 2016.

On January 10, 2017, the City filed a motion to dismiss or, in the alternative, for summary judgment, claiming that the trial court lacked jurisdiction to consider Dullaghan's request under the controlling statute. Specifically, the City cited Indiana Code section 36-8-3.5-18, which permits judicial review of a merit commission's decision only when the decision involves: (1) a suspension of more than ten days, (2) a demotion, or (3) a dismissal. The City argued that the Commission's denial of Dullaghan's petition to change his hire date did not fall within any of these specified categories and that the trial court was therefore without jurisdiction to review the Commission's decision. Dullaghan countered that the denial of his request to change his hiring date was tantamount to a demotion and that the trial court therefore did have jurisdiction to review the Commission's decision.

[14] The trial court held a hearing on the City's motion on February 15, 2018, and issued an order denying the motion on February 23, 2018. On March 22, 2018, the City filed a request with the trial court to certify its order for interlocutory appeal, which the trial court granted on March 27, 2018. The City then filed a motion with this court asking that we accept interlocutory jurisdiction. On May 4, 2018, the motions panel of this court granted the City's motion, and this appeal ensued.

## Standard of Review

[15] The City appeals from the trial court's denial of its motion to dismiss or, in the alternative, for summary judgment. In its motion, the City argued, as it does on appeal, that the trial court lacked subject matter jurisdiction.

[16]    The lack of subject matter jurisdiction may be raised as an affirmative defense either in an answer to the complaint or in a motion to dismiss. *GKN Co. v. Magness*, 744 N.E.2d 397, 403–04 (Ind. 2001). Generally, the party challenging the trial court's subject matter jurisdiction bears the burden of establishing that jurisdiction does not exist. *Id*. at 404. In ruling upon a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion, but may also consider affidavits or supporting evidence. *Id*. at 400. Additionally, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id*.

[17]    The standard of review we apply on appeal depends upon what happened in the trial court. *Id*. at 401. If the facts before the trial court are undisputed, the question of subject matter jurisdiction is purely one of law, and we accordingly review the trial court's ruling *de novo*. *Id*. If the facts are in dispute, our standard of review depends upon whether the trial court conducted an evidentiary hearing. *Id*. If the trial court conducted an evidentiary hearing where it engaged in the classic fact-finding functions of evaluating the character and credibility of witnesses, then we give the trial court's factual findings and judgment deference and will only reverse for clear error. *Id*. If, however, the facts are disputed, but the trial court rules on a paper record without conducting an evidentiary hearing, then we afford no deference to the trial court's factual findings or judgment because, under such circumstances, we are in as good a position as the trial court to determine whether there is subject matter jurisdiction. *Id*.

Thus, our review is also *de novo* if the facts are disputed and the trial court has ruled upon a paper record. *Id.*

[18] Here, the trial court held a hearing at which it heard arguments from both parties, but no witnesses were sworn and no evidence was presented. Thus, the trial court did not hold an *evidentiary* hearing, at which it exercised its role as a finder of fact. Instead, the trial court ruled on a paper record based on the arguments of counsel. We therefore review the trial court's decision *de novo*. *See id.*

## Discussion and Decision

[19] The City contends that the trial court was without jurisdiction to hear Dullaghan's claims regarding his hire date and that the court should therefore have granted its motion to dismiss. Dullaghan counters that the trial court properly denied the City's motion to dismiss because the court did have jurisdiction to consider his claim.

[20] Both parties agree that the power of a trial court to consider the decision of a Fire Merit Commission is governed by Indiana Code section 36-8-3.5-18(a), which provides that "[a] member who is aggrieved by a decision of the commission to suspend the member for a period greater than ten (10) calendar days, demote the member, or dismiss the member may appeal to the circuit or superior court of the county in which the unit is located." Here, it is undisputed that Dullaghan was not dismissed, nor was he suspended for any period.

Therefore, the ability of the trial court to consider his claims depends upon whether he was demoted.

[21] The City argues that, even considering the evidence in the light most favorable to Dullaghan, the evidence shows that he was not demoted. Dullaghan counters that, by rejecting his claim regarding his hire date, the Commission effectively demoted him. Accordingly, the resolution of this case depends upon whether the Commission's decision not to alter (according to the City) or correct (according to Dullaghan) the date on which Dullaghan was hired amounts to a "demotion" that would permit the trial court to review the Commission's decision.[2]

[22] When interpreting a statute, our primary goal is to ascertain and give effect to the intent of the legislature. *Gray v. D & G, Inc.*, 938 N.E.2d 256, 259 (Ind. Ct. App. 2010). The best evidence of legislative intent is the language of the statute itself. *Id.* Therefore, we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.*

[23] Indiana Code section 36-8-3.5-18 does not contain a definition of the word "demote." In fact, our search of the Indiana Code reveals only one definition of the related word "demotion," under the statues governing the State Civil Service System. *See* Ind. Code § 4-15-2.2-35(d) ("The reassignment of a

---

[2] We agree with Dullaghan that the trial court had authority to consider the jurisdictional question of whether Dullaghan was, or was not, demoted. We conclude, however, that even considering the facts in the light most favorable to Dullaghan, he was not, as a matter of law, demoted.

classified employee to a position in a class of a lower rank is a demotion."). We therefore turn to dictionaries to assist us in determining the plain and ordinary meaning of the word "demote." *See Montalvo v. State ex rel. Zoeller*, 27 N.E.3d 795, 799 (Ind. Ct. App. 2015) (noting that if the legislature has not defined a word in a statute, we may properly consult English language dictionaries to determine the plain and ordinary meaning of a word) (citing *Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1068 (Ind. 2007)), *trans. denied*.

[24] The verb "demote" has been defined by various English language dictionaries as "to reduce to a lower grade or rank,"[3] "to reduce to a lower grade, rank, class, or position,"[4] "[t]o reduce in grade, rank, or status,"[5] "[r]educe to a lower rank or class."[6] *See also Demote*, Black's Law Dictionary (10th ed. 2014) (defining "demote" as "[t]o lower (usu. a person) in rank, position, pay, or other status."). *See also Heyne v. Mabrey*, 178 Ind. App. 610, 613, 383 N.E.2d 464, 467 (1978) (holding that plaintiffs, who were state employees whose positions were reclassified and reduced in job designation, but who did not suffer any reduction in pay or have their duties reduced, were not "demoted"

---

[3] Webster's Third New International Dictionary 601 (2002).

[4] Random House Dictionary Unabridged 531 (2d. ed. 1987).

[5] American Heritage Dictionary 484 (4th ed. 2000).

[6] New Shorter Oxford English Dictionary 631 (4th ed. 1993).

where their only possible injury was the change in job titles and the loss of potential merit or step increases in pay).[7]

[25] Here, even viewing all the evidence in the light most favorable to Dullaghan, the injury he claims he has suffered as a result of the Commission's decision is priority when choosing days off and bidding for shift assignment. Seniority is also considered as a part of the promotion process. But the Commission's decision to deny Dullaghan's request to alter his hire date did not reduce Dullaghan in rank or position. Dullaghan is and remains a private first-class firefighter. Dullaghan's lower seniority does not affect his pay or benefits, and it is only one of many factors when it comes to determining promotions. For this reason, the Commission's decision did not "demote" Dullaghan.[8]

[26] Furthermore, the Commission's decision did not *reduce* Dullaghan to a less senior position. It merely chose not to alter his current seniority, and Dullaghan has a*lways* had less seniority than the other members of his fellow recruiting class.

---

[7] Dullaghan argues that *Heyne* is distinguishable because the court also held that "[i]f the reduction in grade had been accomplished by the appointing authority, it could be said to be a demotion within the meaning of [the controlling statute]." *Id.* at 613, 383 N.E.2d at 466–67. The court then went on, however, to note that the change in classification was not a demotion because the plaintiffs had not suffered a loss of salary or reduction in duties. *Id.*, 383 N.E.2d at 467. Here, even though the City is the appointing authority, Dullaghan has still suffered no reduction in salary or duties, and he has therefore not been demoted.

[8] Dullaghan's citation to *Indiana Department of Environmental Management. v. West*, 838 N.E.2d 408 (Ind. 2005), for the proposition that "[a] demotion is an adverse employment action . . ." is unavailing. This quotation, as Dullaghan acknowledges, came from the separate opinion of Justice Boehm, joined by Justice Rucker, concurring and dissenting in part, and therefore does not represent the opinion of our supreme court.

# Conclusion

For all of these reasons, we conclude that the Commission's rejection of Dullaghan's request to alter his hire date did not constitute a demotion. Because the Commission's decision did not constitute a demotion, the trial court did not have jurisdiction to review the Commission's decision under the statute granting the trial court authority to review decisions of the Commission. Therefore, the trial court should have granted the City's motion to dismiss. We reverse the trial court's order and remand with instructions that the trial court grant the City's motion to dismiss.

Reversed and remanded.

Bailey, J., and Bradford, J., concur.